**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **THE CHILDREN'S HOSPITAL OF** | : | |
| **PHILADELPHIA,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **No. 07-5061** |
| | : | |
| **HORIZON NJ HEALTH, ET AL.,** | : | |
| **Defendants.** | : | |

Tucker, J.                                                          September____,2008

<u>**MEMORANDUM & ORDER**</u>

Presently before this Court are Defendants' Motion to Dismiss (Docs. 8 & 13), Plaintiff's Response (Doc. 17) and oral argument held before this Court on March 17, 2008.  Defendants move for 1) dismissal pursuant to Fed. R. Civ. P. 12(b)(6) or, in the alternative, to compel plaintiff to arbitration on all claims save for any claim for injunctive relief ;and 2) a stay of any remaining claims.  This court will grant in part and deny in part Defendants' motion.

<u>**BACKGROUND**</u>

Based on a Hospital Services Agreement dated January 1, 1997, Plaintiff, Children's Hospital of Philadelphia ("CHOP") participated in Horizon NJ's network of providers.  Under their agreement, CHOP would provide hospital services to Horizon NJ members in exchange for payment mandated by the parties' agreement.

Plaintiff CHOP and Defendant Horizon, a health management organization that operates a Medicaid managed care plan, are currently engaged in pending arbitration before the American Arbitration Association relating to Horizon's alleged refusal to pay for tens of millions of dollars of medical services provided to Horizon members by CHOP.  While CHOP and Horizon disagreed over the unpaid sums of money, Horizon on August 28, 2007, gave CHOP notice that

it would not renew the parties' hospital agreement, effective December 31, 2007.  Under

N.J.A.C. § 11:24-3.5(e), the terms and conditions of the agreement must remain in effect for an

extension period of four months, resulting in the extension of the agreement until April 30, 2008.

Plaintiff alleges that after August 28, 2007, it began encountering problems obtaining

pre-certifications for Horizon patients whose doctors had referred them to CHOP.  Allegedly,

Defendant Horizon was steering its members to other network hospitals; especially those located

in New Jersey.

Plaintiff further alleges that Defendants Pierznick and Doe misappropriated trade secrets.

Specifically, Plaintiff alleges that Pierznick, Director of Network Contacting and Strategy at

Horizon, utilized information pertaining to Plaintiff's confidential rate schedules with another

Medicaid managed care plan to deny payment that Horizon deemed "too high."  Pierznick

obtained this information from another Horizon employee, Defendant Doe, who was previously

employed at the other competing Medicaid managed care plan.  According to Plaintiff, the

payment methodology and rate agreements between CHOP and the other Medicaid managed

care plan were "highly confidential and proprietary, and constitute[d] a protected trade secret."

(First Am. Compl. 70.)

After initiation of the arbitration suit, the press published the story in an article titled

"CHOP Sues Over Unpaid Bills," appearing in the Philadelphia Business Journal.  In Response,

Defendant Rubino, Director of Public Affairs for Horizon's parent company, Horizon Blue Cross

and Blue Shield of New Jersey, undisputedly stated, "We are not going to sit back. We want

them to explain their . . . pricing policies that charge New Jersey's poorest families significantly

more than Pennsylvania's Medicaid Recipients." (Pl.'s Opp'n 29.)

Plaintiff sets forth six counts: 1) breach of contract against defendant Horizon NJ Health ("Horizon"); 2) deprivation of constitutional rights in violation of 42 U.S.C. § 1983 against Horizon; 3) deprivation of Social Security Act rights in violation of 42 U.S.C. § 1983 against HORIZON; 4) violation of the Pennsylvania Uniform Trade Secrets Act ("PUTSA") (12 Pa. C.S.A. §§ 5302-5304) against Defendants Richard B. Pierznick and John Doe, individually; 5) violation of the New Jersey common law protections against misappropriation of trade secrets against Pierznick and Doe, individually; and 6) violation of the Pennsylvania Uniform Single Publication Act (42 Pa. C.S. §§ 8341-8345) against Thomas W. Rubino, in his individual and official capacities.

## STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), the court "must take all the well pleaded allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the pleadings, the plaintiff may be entitled to relief." Colburn v. Upper Darby Township, 838 F.2d 663, 665-66 (3d Cir. 1988) (citations omitted), cert. denied, 489 U.S. 1065, 109 S. Ct. 1338, 103 L. Ed. 2d 808 (1989); see Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The court must decide whether "relief could be granted on any set of facts which could be proved." Ransom v. Marrazzo, 848 F.2d 398, 401 (3d Cir. 1988). A motion to dismiss may be granted only "if appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102, 2 L. Ed. 2d 80 (1957).

## DISCUSSION

Defendants argue that CHOP has no claim under Section 1983 because Horizon was not acting under color of law and because CHOP lacks third-party or associational standing to raise claims on behalf of members of Horizon.

**A.  Section 1983 - State Actor**

According the Horizon, CHOP fails to allege that the State was responsible for Horizon's alleged acts in either "steering" its members away from CHOP or in not renewing the Agreement.   Horizon avers that CHOP instead alleges that senior government officials generally encouraged Horizon to "keep New Jersey Medicaid dollars in New Jersey."  Horizon states that there is no allegation that these unknown officials instructed Horizon to not renew the Agreement or send Horizon members to New Jersey providers, or that the State made any of these decisions.  CHOP's allegations, Horizon avers, are therefore deficient.

Plaintiff retorts that a private party may be deemed a state actor if it: (1) is acting under government compulsion (citing Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296 (2001)); (2) performs a function that has traditionally been the exclusive domain of the government (citing Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982)); or (3) has a symbiotic relationship with the government (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345,352 (1972) and Blum v. Yarefsky, 457 U.S. 991, 1004 (1982)).

The Fourteenth Amendment provides in part that no state shall deprive any person of life, liberty, or property without due process of law. Blum, 457 U.S. at 1003. The action inhibited by the first section of the Fourteenth Amendment is only such action as may fairly be said to be that of the states.  Id.  The Fourteenth Amendment erects no shield against merely private conduct, however discriminatory or wrongful.  Id.  The mere fact that a business is subject to state

4

regulation does not by itself convert its action into that of the state for purposes of the Fourteenth Amendment.  Id.

### 1.      Function traditionally exclusive domain of government

The relevant question under this state action inquiry is not simply whether a private group is serving a "public function."   Rendell-Baker, 457 U.S. at 842. The question is whether the function performed has been traditionally the *exclusive* prerogative of the state.  Id.  That a private entity performs a function which serves the public does not make its acts state action.  Id.

Defendants correctly assert that the functions issue in the instant matter concern the operation of an HMO or MCO, the contract or non-renewal of provider agreements and decisions to which medical provider a member will be sent, are functions that are provided by private entities or organizations, not exclusively by government.  Cf. West v. Atkins, 487 U.S. 42, 54 (1988) (Since an inmate "must rely on prison authorities to treat his medical needs," a physician employed to provide medical services to state prison inmates, acted under color of state law for purposes of § 1983 when undertaking his duties in treating petitioner's injury. Such conduct is fairly attributable to the State.")

Plaintiff retorts that Horizon should be treated differently since "it administers a governmental program under a comprehensive matrix of federal laws regulations and constraints, as though it were the state itself is unpersuasive."  The test remains.  The functions performed by Horizon cannot be construed to be traditionally the exclusive prerogative of the state.

### 2.      Symbiotic Relationship

The Supreme Court of the United States' holding in Burton v. Wilmington Parking Auth., stands for the proposition that, if a 'symbiotic' relationship does exist, then, by virtue of the

close involvement of the state and interdependence of the actors in the association formed and the challenged activity, the conduct complained of is in fact "fairly attributable" to the state. Chrissman v. Dover Downs Entm't, Inc., 289 F.3d 231, 240-241 (3d Cir. 2002).  Instead of examining the conduct and, then, the state's role in it, Burton would have the court look first at the relationship and test whether the conduct could be linked to the joint beneficial activities--as it was in Burton--due to the essential revenues flowing from the discriminatory restaurant operation.  Id.  The court views Burton, then, not as an exception to the rule that the conduct complained of must be fairly attributable to the state, but, rather, as providing another vantage point or way of assessing the necessary connection to the state.  Id.  However, as Plaintiff acknowledges, the court has since limited Burton to lessees of public property.  Id. (citing Jackson v. Metropolitan Edison Co., 419 U.S. 345, 358 (1974) (O'Connor, J. dissenting) Plaintiff's strong reliance on Burton in contending a symbiotic relationship between Horizon and the state is therefore inappropriate. The Third Circuit held that the "symbiotic relationship" test continues to provide an additional, albeit "narrow," basis for finding that private action may fairly be attributed to the state.   Benn v. Universal Health Sys., 371 F.3d 165,173 (3d Cir. 2004). Therefore, Plaintiff's reliance on Burton is not wholly inappropriate.

However, the Third Circuit has explained that the symbiotic relationship test demands "a close association of mutual benefit" between the state and the private entity.  Id. (citing Chrissman, 289 F.3d at 240.)  Plaintiff has alleged that "[a]pproximately fifty (50) percent of the funding Horizon NJ receives from [the New Jersey Department of Health and Human Services] is federal funding" and that "[the New Jersey Department of Health and Human Services] and New Jersey derive substantial benefit."  These allegations sufficiently allege a symbiotic relationship.

### 3.   Government compulsion

To prove government compulsion, the complaining party must show that there is a sufficiently close nexus between the state and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the state itself.  Blum, 457 U.S. at 1004.  A state can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the state.  Id.  Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the state responsible for those initiatives under the terms of the Fourteenth Amendment,"[t]he purpose of this requirement is to assure that constitutional standards are invoked only when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."  Id.

CHOP has alleged that "Horizon NJ representatives also stated . . .,in so many words, that they were being urged by senior government officials in New Jersey 'to keep New Jersey medicaid dollars in New Jersey.'"  (FAC. ¶ 29.)  While this allegation is indeed illusive, it meets the requirement of the test.  Taking the allegations of the first amended complaint as true, CHOP has alleged a significant, albeit covert, encouragement by government officials to steer Horizon members away from CHOP.   A statement by a senior state official to "keep Medicaid dollars in New Jersey" addressed to Horizon representatives would indeed provide significant encouragement for Horizon not to send "Medicaid dollars," i.e., members to Pennsylvania i.e., CHOP.

### B.   Standing

Plaintiff avers that it has made out viable claims under Section 1983 because Horizon's members have cognizable claims under Title XIX of the Social Security Medicaid Act Sections

7

1902(a)(30)(A), 1903(m)(1)(A)(I), 1902(a)(16)1902(a)(19) based on the enforceable individual rights of beneficiaries.  CHOP explains that it seeks to enforce these rights on behalf of the beneficiaries because its interests are intertwined with the interests of its patients.

The "case or controversy" standing requirement under Article III, § 2 of the United States Constitution, requires that a plaintiff establish that it "has suffered a cognizable injury that is causally related to the alleged conduct of the defendant and is redressable by judicial action." Pa. Psychiatric Soc'y v. Green Spring Health Servs., 280 F.3d 278, 283 (3d Cir. 2002)(citing Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000); The Pitt News v. Fisher, 215 F.3d 354, 359 (3d Cir. 2000).   In Pennsylvania Psychiatric Society, the Circuit Court explained that "[a]ssociations may satisfy these elements by asserting claims that arise from injuries they directly sustain."   Pa. Psychiatric Soc'y, 280 F.3d at 283.  Further, where an association alleges injuries not sustained  to itself, an association may pursue claims solely as a representative of its members. Id.   The Third Circuit explained that association standing recognizes "that the primary reason people join an organization is often to create an effective vehicle for vindicating interests that they share with others." Id.  (citing Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 187 (1951) (Jackson, J., concurring) (noting purpose of joining an association "often is to permit the association . . . to vindicate the interests of all")).

In asserting associational standing an association must demonstrate that "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."  Id. (citing Hunt v. Wash. State Apple Adver. Comm'n, 432 U.S. 333, 343(1977) (permitting state agency that represented apple industry to challenge North Carolina statute).

CHOP cannot assert associational standing since patients are not members of CHOP. However, CHOP seeks to assert claims of its patients who are also allegedly injured by Defendants' practices under the doctrine of third-party standing. CHOP contends that its doctors have third-party standing to assert the claims of their patients, and the CHOP has standing to bring the claims of its doctors, including their third-party claims. Defendants have not challenged CHOP's standing to bring claims of its doctors but has challenged CHOP's standing to bring the doctor's third-party claims.   The appropriate inquiry is therefore whether CHOP has sufficiently alleged facts that would support the third-party standing of its doctors to bring the claims of their patients, and second, whether the CHOP has associational standing to assert its doctor's third-party claims. See Pa. Psychiatric Soc'y, 280 F.3d at 287.

In Pennsylvania Psychiatric Society the Third Circuit first noted that "[a]lthough the Pennsylvania Psychiatric Society itself has not suffered direct injury, it is uncontested that it properly pleaded that defendants' policies and procedures have economically injured its member psychiatrists and undermined their ability to provide quality health care." Id. at 289.  The Circuit Court then noted that "while the Society does not itself stand in an appropriate relationship to the patients' claims to directly assert them, its members may have third-party standing to do so. Id. And because plaintiff seeks to establish standing on the basis of its members' standing to bring these claims, the members are the appropriate focus of inquiry for these purposes." Id.  The Circuit Court next turned to whether the psychiatrists and their patients have a sufficiently "close relationship" which will permit the physicians to effectively advance their patients' claims. Id. "To meet this standard, this relationship must permit the psychiatrists to operate 'fully, or very nearly, as effective a proponent' of their patients' rights as the patients themselves." Id. (citing Powers, 499 U.S. at 413 (quoting Singleton, 428 U.S. at 115)).

The relationship between the CHOP's doctors and their patient fulfills this requirement.[1] See Singleton v. Wulff, 428 U.S. 106 (the Court granted physicians third-party standing on behalf of their patients to challenge a statute prohibiting Medicaid funding for certain abortions.) The Third Circuit acknowledge that the exists an "inherent closeness of the doctor-patient relationship . . . [thus] the physicians could efficaciously advocate their patients' interests. Id. (citing Singleton v. Wulff, 428 U.S. 106).

Finally, the Court must examine whether CHOP patients face obstacles to pursuing litigation themselves. See id.  "This criterion does not require an absolute bar from suit, but 'some hindrance to the third party's ability to protect his or her own interests.'" Id. (citing Powers, 499 U.S. at 411).  "A party need not face insurmountable hurdles to warrant third-party standing." Id.

CHOP has sufficiently alleged a practical impediment.  Specifically, CHOP alleges that Horizon members "are heavily dependent on Horizon for medical care for their children" and therefore members may would be concerned that bringing suit against Horizon might upset that relationship. (Tr. 69-70, March 18, 2008)

Further, the Court's finding that CHOP has alleged facts sufficient to establish the third-party standing of its doctors to bring their patients claims implies the satisfaction of the first prong of the Hunt analysis.[11]  CHOP must also meet the requirements that "the interests it seeks to protect are germane to the organization's purpose" and that "neither the claim asserted nor the

---

[1] Here CHOP indeed alleges sufficient facts that supports its contention that stands in an appropriate relationship to its patients as a health care provider.  The relationship between CHOP and its patients allows it to effectively advance its patients claims and therefore third-party standing is arguably unnecessary.

[11] The first prong of the Hunt analysis requires that the association's members would otherwise have standing . . ."  See Hunt, supra.

relief requested requires the participation of individual members in the lawsuit." Id. at 292.

Third party standing requires that the party who advances the interests of another party to also

suffer a discrete injury.  Id. However, the Circuit Court has held that when an association, which

has not sustained direct injury, obtains standing to pursue the claims of its members, the

association may rely on the injuries sustained by its members to satisfy the injury-in-fact

requirement.  Id. at 293.

   CHOP is "a pediatric integrated health case delivery system providing a comprehensive

range of pediatric medical services."  (FAC ¶ 6.)  CHOP has sufficiently alleged that the

protection of its patients rights is integral to its core purpose.   CHOP's section 1983 allegations

that Horizon's violates the Social Security Act through its alleged interference with patient

referrals to CHOP and its allegations of Horizon's efforts to redirect those patients to instate

hospitals, do not require the participation of the individual patients in this lawsuit since such

violations can be proved by the referrals themselves and the language of the Act.

   Defendants also argue that Horizon members "certainly did not go to CHOP 'to create an

effective vehicle for vindicating interest' that they share with other people."  However, Horizon

members' motivation for seeking treatment at CHOP  is a question fact inappropriate for this

Court to resolve on a motion to dismiss.

   **D.  Injunctive Relief**

   Defendants argue that any injunctive relief that Plaintiff seeks should fail because CHOP

and Horizon had agreed upon an end date of April 30, 2008 for termination of the parties'

agreement.  Further, the parties' agreement says nothing about steering (or not steering) patients

to CHOP.  Plaintiff retorts that it has properly pled a claim for injunctive relief arising out of

Horizon's breach of the parties' agreement, in particular, state and federal laws that govern the

11

operation of the agreement and guarantee the right of insured patients to use any provider within their network.   The existence and/or application of the end date for the termination of the parties' agreement is a question of fact inappropriate for resolution at this stage.

E.   **Misappropriation of Trade Secrets**

Horizon argues that Plaintiff's claim under PUTSA fails because the parties' agreement is to be governed by the laws of New Jersey and because the alleged "injury causing conduct" in the misappropriation of trade secrets action took place in New Jersey. (Defs.' Mot. Dismiss 5.) However, Horizon argues, Plaintiff also fails to state a claim for misappropriation of trade secrets under New Jersey common law because several necessary elements are not alleged. Specifically, Horizon contends that neither individual parties implicated in the misappropriation of trade secrets claim were ever employed by Plaintiff, nor are they "competitors" of Plaintiff. (Defs.' Mot. Dismiss 6.)  Plaintiff correctly responds that a motion to dismiss does not present an appropriate forum for a choice of law (Pennsylvania or New Jersey) determination. Plaintiff has alleged facts sufficient to establish that the actions relevant to its claim of misappropriation of trade secrets took place in Pennsylvania, the Court will therefore decline to dismiss this claim.

F.   **Defamation**

Defendants argue that Plaintiff's defamation claim is based on "nothing more than 'rhetorical hyperbole' which is not actionable as a matter of law."  (Defs.' Mot. Dismiss 6.) Plaintiff responds that Rubino's undisputed statement to the press presents questions of interpretation and conditional privilege that should be submitted to a jury.  This Court agrees. Under Pennsyvlania law, "A communication is defamatory if it tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." <u>Maier v. Maretti</u>, 671 A.2d 701, 704 (Pa. Super. Ct. 1996).

Plaintiff has alleged sufficient facts to sustain its claim for defamation.  The construction of Rubino's statement—whether defamatory, pure opinion, or capable of another non-defamatory interpretation—is an issue that should be decided by a jury.  See Maier, 671 A.2d at 704.

### G.   Arbitration

Section 2 of the Federal Arbitration Act ("FAA") provides:

"A written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Under the FAA,  in order to determine if there is an enforceable arbitration agreement between the parties that compels arbitration and a stay or dismissal of the present action, a court must consider: (1) whether a valid agreement to arbitrate exists between the parties and (2) whether the specific dispute falls within the substance and scope of that agreement.  Trippe Mfg. Co. v. Niles Audio Corp., 401 F.3d 529, 532 (3d Cir. 2005) (citations omitted).  Before compelling an unwilling party to arbitrate, the Court is required to engage in a limited review to ensure that the dispute is arbitrable.  See AT&T Tech v. Comm. Workers of Am., 475 U.S. 643, 649 (1986).

If it is determined that an arbitration agreement exists and that the dispute falls within the scope of the agreement, the FAA requires the court to refer the matter to arbitration proceedings. 9 U.S.C.A. § 3.  The federal policy encouraging recourse to arbitration requires federal courts to first look toward the relevant state law of contracts in deciding whether an arbitration agreement is valid under the FAA.  See First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Applying the relevant state contract law, a court may . . . hold that an agreement to arbitrate is

unenforceable based on a generally applicable contractual defense such as unconscionability.'" Parilla v. IAP Worldwide Services, VI, Inc., 368 F.3d 269, 275 (3d Cir. 2004) (quoting Alexander v. Anthony Intern., L.P., 341 F.3d 256, 264 (3d Cir. 2003)).  However where a challenge is to the validity of a contract as a whole rather than specifically to the arbitration clause within it, the dispute must be resolved by the arbitrator, not the court.  Buckeye Check Cashing, Inc. v.  Cardegna,126 S. Ct. 1204, 1209 (2006); see also Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967); Southland Corp. v. Keating, 465 U.S. 1 (1983).  Courts should interpret arbitration clauses liberally.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").

  "If a valid arbitration agreement exists between the parties and the . . . claim is within the scope of the agreement, the controversy must be submitted to arbitration." Messa v. State Farm Ins. Co., 641 A.2d 1167, 1170 (Pa. Super. Ct. 1994).  The arbitration agreement relating to the present action states that the parties will arbitrate "[a]ny and all controversies. . . pertaining to their respective duties under this Agreement."  Agreement, Art. III.E.  Thus, if the arbitration agreement is valid and the dispute falls within the scope of the agreement, it must be enforced.

  Neither party disputes the validity of the arbitration agreement; merely the applicability. Count One alleges breach of contract and therefore falls within the scope of the arbitration agreement.  Counts Two and Three allege violations of Section 1983 and are therefore not eligible for arbitration.  Shearson/Am. Express Inc. v. McMahon, 482 U.S. 220, 227 (1987). Counts Four, Five, and Six allege violations of PUTSA, common law misappropriation of trade secrets, and defamation respectively.  These disputes are within the arbitration agreement and are therefore arbitrable.

14

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants' Motion to Dismiss will be denied. All Counts of the First Amended Complaint sufficiently state a cause of action. However, Counts One, Four, Five, and Six allege disputes that are within the arbitration agreement. The remaining Counts, Two and Three, are not subject to arbitration.

An appropriate order follows.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE CHILDREN'S HOSPITAL OF   :
PHILADELPHIA,        :
   Plaintiff,       :   **CIVIL ACTION**
             :
   v.         :   **No. 07-5061**
             :
HORIZON NJ HEALTH, ET AL.,   :
   Defendant.      :

## ORDER

  **AND NOW,** on this _____ day of September, 2008, upon consideration of

Defendants' Motion to Dismiss or in the Alternative, Motion to Compel (Docs. 8 & 13),

Plaintiff's Response (Doc. 17) and oral argument held before this Court on March 17, 2008, **IT**

**IS HEREBY ORDERED AND DECREED** that Defendants' Motion is **GRANTED IN PART**

and **DENIED IN PART**.  All Counts of the First Amended Complaint state a sufficient cause of

action.  Counts One, Four, Five, and Six of the First Amended Complaint are ordered to

arbitration.  Counts Two and Three are ineligible for arbitration and will be stayed pending

arbitration.

         **BY THE COURT:**

         /s/ Petrese B. Tucker

         _____
         **Hon. Petrese B. Tucker, U.S.D.J.**